1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **EASTERN DISTRICT OF CALIFORNIA**
10
11   JOEY ALVAREZ,                              )   Case No.: 1:19-cv-00003-DAD-SAB (PC)
                                                )
12                    Plaintiff,                )
                                                )   FINDINGS AND RECOMMENDATIONS
13        v.                                     )   RECOMMENDING DEFENDANT SILVA'S
                                                )   MOTION FOR SUMMARY JUDGMENT BE
14   SILVA, et.al.,                              )   GRANTED
                                                )
15                    Defendants.               )   [ECF No. 44]
                                                )
16   _____   )

17        Plaintiff Joey Alvarez is appearing *pro se* and *in forma pauperis* in this civil rights action

18   pursuant to 42 U.S.C. § 1983.

19        Currently before the Court is Defendant Silva's motion for summary judgment, filed February

20   3, 2020.

21                                        **I.**

22                          **RELEVANT BACKGROUND**

23        This action is proceeding against Defendants Silva and Rodriguez for excessive force in

24   violation of the Eighth Amendment.[1]

25        On September 20, 2019, Defendant Silva filed an answer to the complaint.  (ECF No. 28.)

26
27
_____

28   [1] Defendant Rodriguez has not yet been served with process.  (ECF No. 53.)

1

On October 2, 2019, the Court issued the discovery and scheduling order.  (ECF No. 29.)

As previously stated, on February 3, 2020, Defendant Silva filed a motion for summary judgment.  (ECF No. 44.)  Plaintiff did not file an opposition and the time to do so has expired.  Local Rule 230(l).  Accordingly, Defendant's motion for summary judgment is deemed submitted without oral argument.  Id.

## II.

### LEGAL STANDARD

### A.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

///

///

2

### B.      Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."   42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").   Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."

3

Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

### III.

### DISCUSSION

**A.    Description of CDCR's Administrative Remedy Process**

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances.  Cal. Code Regs. tit. 15, § 3084.1 (2014).  Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA).  Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event.  Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).  The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.   If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B.    Summary of Plaintiff's Complaint**

Plaintiff contends that Defendant officer Silva used excessive force upon him during Plaintiff's transport to the Kings County Sheriff's Office on October 27, 2018.  Once all the restraints were removed, correctional officers Silva and Rodriguez attacked Plaintiff.  Plaintiff was taken down to the ground forcefully, landing on his face suffering an injury.  Once Plaintiff was done on the ground and placed in handcuffs and shackles, the beating continued, despite the fact that he was no longer a threat.

4

Plaintiff was taken to the hospital and treated.  Upon his return to the county jail, Plaintiff was supposed to be housed in the infirmary to be observed by medical staff due to the head injury and broken wrist.  However, Plaintiff was housed in another part of the jail and not cared for by medical staff.

Plaintiff requests compensation in the amount of $50,000.00.

**C.      Statement of Undisputed Facts**

1.      Plaintiff Joey Alvarez is an inmate in the California Department of Corrections and Rehabilitation (CDCR) and currently resides at Corcoran State Prison.  (Pl.'s Am. Compl., ECF No. 16; Ceballos Decl. ¶ 5.)

2.      Plaintiff alleges that Defendant T. Silva used excessive force against him during his transport to the Kings County Sheriff's Office on or about October 27, 2018.  (Id.)

3.      Plaintiff used the Kings County Sheriff's Office inmate grievance process to submit a grievance about the incident that occurred on October 27, 2018.  (Pl.'s Dep. 16:21-25.)

4.      CDCR institutions also have a three-level inmate grievance process.  Plaintiff admitted that he was aware of that three-level review process.  Plaintiff submitted an inmate grievance containing allegations of excessive force stemming from an incident that occurred on October 27, 2018 to Kings County.  Plaintiff pursued the grievance through all three levels of review that were provided by the Kings County Sheriff's Office. (Ceballos Decl. ¶ 3; Pl.'s Dep. 19:23-25; 20:1-8.)

5.      Under CDCR's grievance process, the inmate must complete all three levels of review before the appeal is considered exhausted.  CDCR institutions also have a three-level inmate grievance process.  Plaintiff admitted that he was aware of the three-level review process.  (Ceballos Decl. ¶ 3; Pl.'s Dep. 19:23-25; 20:1-8.)

6.      There is no record of Plaintiff submitting any appeals alleging that Officer Silva used excessive force against him within 30 days of October 27, 2018.  Under Cal. Code Regs., tit. 15, § 3084.8(b)(1) and (2), an inmate or parolee must submit the appeal within thirty calendar days of either 1) the occurrence of the event or decision being appealed; or 2) upon first having knowledge of the action or decision being appealed.  (Ceballos Decl. ¶¶ 3-4, 9; Pl.'s Dep. 19:23-25; 20:1-8.)

///

5

7.      Plaintiff admitted that he did not submit any inmate grievance to Corcoran because he was "no longer considered state property."  Plaintiff also did not write to Corcoran's appeals coordinator about submitting a CDCR grievance.  There is no record of Plaintiff submitting any appeals alleging that Officer Silva used excessive force against him within 30 days of October 27, 2018.  Corcoran would have accepted an inmate grievance had Plaintiff mailed the grievance to them.  (Pl.'s Dep. 19:5-13; 19:23-25; 20:1-8; 20:15-25; 21:1-19; Ceballos Decl. ¶¶ 3-5, 9.)

8.      Plaintiff was deposed on December 20, 2019, and testified that Officer Silva removed Plaintiff's restraints.  (Pl.'s Dep. 26:18-23; 19:5-13; 20:15-25; 21:1-19.)

9.      Plaintiff testified that Silva made physical contact with Plaintiff first; Silva grabbed Plaintiff with his hands, he grabbed Plaintiff by the neck, he strangled Plaintiff with his hands.  Plaintiff was deposed on December 20, 2019, and testified that Officer Silva removed Plaintiff's restraints.  (Pl.'s Dep. 26:18-23; 19:5-13; 20:15-25; 21:1-19; Ceballos Decl. ¶¶ 5, 9.)

10.      Plaintiff testified that after Silva assaulted Plaintiff, Plaintiff struck Silva with his right fist, striking Officer Silva in the nose.  Plaintiff testified that Officer Silva then "flew backwards" out of the cell.  (Pl.'s Dep. 41:6-20; 30:6-25; 40:9-14, 17-20.)

11.      Plaintiff identified himself in still photographs taken from surveillance footage from the Kings County Sheriff's Office marked as Exhibit F.  (Pl.'s Dep. 49; 50; 51:14-24; Ex. F.)

12.      Plaintiff also identified Officer Silva in still photographs taken from surveillance footage from the Kings County Sheriff's Office marked as Exhibit F.  (Pl.'s Dep. 52; Ex. F.)

13.      Plaintiff agreed that the stills marked as Deponent's Exhibit F fairly and accurately depicted the Kings County Sheriff's Office on October 27, 2018.  (Pl.'s Dep. 52:19-23; 53, Ex. F.)

14.      Officer T. Silva transported Plaintiff from California State Prison – Corcoran to the Kings County Sheriff's Office on October 27, 2018.  (Silva Decl. ¶ 2.)

15.      Officer Silva had no physical contact with Plaintiff and only held his leg shackles. (Silva Decl. ¶ 2.)

16.      Officer Silva later viewed surveillance footage from the King County Sheriff's Office from October 27, 2018.  (Silva Decl. ¶ 3, Ex. A.)

///

6

17.     Officer Silva identified himself on the video at two minutes and thirty seconds.  Officer Silva approached the holding cell where Plaintiff was held.  (Silva Decl. ¶ 3, Ex. A.)

18.     Officer Silva stood in the doorway of the cell and stood at Plaintiff's left-hand side.  Silva Decl. ¶ 3, Ex. A.)

19.     The video depicts the other officer removing Plaintiff's handcuffs at approximately four minutes and four seconds mark, and as soon as Plaintiff was uncuffed, he struck officer Silva in the nose.  At no time did the video show officer Silva making physical contact with Plaintiff before Plaintiff struck Silva.  (Silva Decl. ¶ 3, Ex. A.)

20.     The video fairly and accurately reflects officer Silva's interaction with Plaintiff.  (Silva Decl. ¶ 3, Ex. A.)

**D.     Analysis of Defendant's Motion**

Defendant argues that there is incontrovertible video evidence showing that officer Silva did not use excessive force.  Defendant also contends that he is entitled to qualified immunity.  Defendant further argues that Plaintiff did not exhaust the administrative remedies prior to filing suit.

1.     Exhaustion of Administrative Remedies

Defendant argues that Plaintiff failed to exhaust the administrative remedies because he did not utilize the grievance process available through CDCR.

Although Plaintiff did not file an opposition, it is undisputed that Plaintiff utilized the grievance process at the Kings County Jail through the final level of review.  (Pl.'s Dep. 19:23-25; 20:1-8.)  It is also undisputed that Plaintiff was released from CDCR custody on October 27, 2018 to the custody of the Kings County Sheriff's Office due to a pending criminal matter.  (Ceballos Decl. ¶ 5.)  Plaintiff remained in Kings County custody until on or about January 10, 2019, when he was taken back into CDCR custody.  (Id.)  Although Ceballos declares that if an appeal would have been submitted it would have been accepted and processed (Ceballos Decl. ¶ 8), Defendant has not submitted any binding or persuasive authority that Plaintiff was required and/or could have exhausted the CDCR administrative remedies after he was out of CDCR custody.  Accordingly, because Plaintiff was not in CDCR custody when the incident took place or thirty days thereafter, Defendant has failed to meet his burden in demonstrating that under these circumstances the CDCR administrative process

was effectively available to him, and the motion for summary judgment should be denied on this ground.

      2.    <u>Excessive Force Claim</u>

Because it is undisputed that Plaintiff was a pretrial detainee on October 27, 2018, when the alleged excessive force took place, the Court must apply the Fourteenth Amendment standard.

The Supreme Court has held that a pretrial detainee's claim that he was subjected to excessive force arises under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2475 (2015).  In order to prevail on an excessive force claim a pretrial detainee must show that the force purposely or knowing used against him was objectively unreasonable. <u>Kingsley</u>, 135 S. Ct. at 2473.  Whether the force is objectively unreasonable turns on the "facts and circumstances of each particular case." <u>Id.</u> at 2473 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).  This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>Kingsley</u>, 135 S. Ct. at 2473.  "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.' " <u>Id.</u> at 2473 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 540 (1979)).

A non-exhaustive list of considerations that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." <u>Kingsley</u>, 135 S.Ct. at 2473.

In conducting the reasonableness analysis, the Court must "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (9th Cir. 2010) (citation omitted). In sum, the operative question is whether the officer's actions were objectively reasonable in light of the facts and circumstances. <u>Graham v. Connor</u>, 490 U.S. at 397.  Furthermore, the objective

reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene, "rather than with 20/20 vision of hindsight." Id. at 396.

Although the Ninth Circuit has " 'held on many occasions' " that " '[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, …summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011) (alterations omitted) (quoting Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc)); see also C.V. by and through Villegas v. City of Anaheim, 823 F.3d 1252, 1255 (9th Cir. 2016) ("[S]ummary judgment should be granted sparingly in excessive force cases.").

However, "[w]hen opposing parties tell different stores, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Here, Defendant has submitted a video recording of the incident at the Kings County Jail. See Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants … so long as their version of the facts is not blatantly contradicted by the video evidence.").

As previously stated, Plaintiff contends that Defendant Silva assaulted him during the transport after the physical restraints were removed. The Court finds that Plaintiff has not presented evidence from which a rational jury could find that Defendant Silva used excessive force or any force for that matter. Based on a review of the video footage of the incident, Plaintiff made the initial physical contact by striking and punching Defendant Silva in the nose.

On October 27, 2018, Plaintiff was being escorted from California State Prison, Corcoran to the Kings County Jail by Defendant Silva. Plaintiff testified at his deposition that Defendant Silva "put his hands on me." (Pl.'s Dep. 40:16.) Plaintiff also testified that Silva strangled him and held him by the shoulder as another officer began striking him. (Pl.'s Dep. 40:24-25; 41:1-2.) Plaintiff contends that Defendant Silva strangled him *before* Plaintiff punched him in the nose. (Pl.'s Dep. 41;6-9.) During Plaintiff's deposition, Plaintiff was shown photographic stills of the Kings County Sheriff's holding cells and identified both himself and Defendant Silva in those photographs. (Pl.'s

9

Dep. 49; 50; 51:14-24; 52.)  Plaintiff also agreed that those photographic stills fairly and accurately depicted the Kings County Sheriff's Office where he was held on October 27, 2018.  (Pl.'s Dep. 52:19-23; 53.)

The video evidence demonstrates that Defendant Silva was standing to Plaintiff's left-hand side while another officer removed Plaintiff's handcuffs.  Once the other officer removed Plaintiff's handcuffs, Plaintiff, without provocation struck officer Silva in the face, causing Silva to stumble backwards out of the cell and fall to the floor.  Defendant Silva did not have any physical contact with Plaintiff before Plaintiff struck him.  Nor did Defendant Silva re-enter the cell after he was struck in the face.[2]  The video recording is consistent with Defendant's testimony and flatly contradicts Plaintiff's self-serving and conclusory statements regarding both his and Defendant Silva's behavior during the altercation.  See Scott v. Harris, 550 U.S. at 380 (holding that lower court had erred in denying summary judgment on Fourth Amendment excessive force claim where video footage "quite clearly contradict[ed] the version of the story told by respondent and adopted by the Court of Appeals.").  Therefore, in light of the undisputed video evidence, no reasonable juror could conclude that Defendant Silva used any force, let alone, excessive force against Plaintiff.  Accordingly, summary judgment should be entered in favor of Defendant Silva.

3.   Qualified Immunity

Because the Court has found that the conduct alleged by Plaintiff does not state a constitutional deprivation, the Court need not address Defendant's argument for qualified immunity.

///

///

///

///

---

[2] Indeed, at his deposition, Plaintiff testified that he did not know where Defendant Silva was when he was taken to the ground by other officers.  "I think when I made contact with Silva he fell out - - he flew out the cell like backwards, so I believe he was outside of the cell in the hallway, but I don't know if he had come back in after he got back up, came back in when I was down.  I'm not sure because I didn't see anything after that.  I just know I was getting hit and I got tased."  (Pl.'s Dep. at 33:23-34:5.)

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendant Silva's motion for summary judgment be granted; and

2.      Judgment be entered in favor of Defendant Silva.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **May 6, 2020**

_____
UNITED STATES MAGISTRATE JUDGE